UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CR-19-387-G |
| | ) |
| CHRISTINA ROCHELLE ANGLIN, | ) |
| a/k/a Christy Anglin, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court are two motions filed by Defendant Christina Rochelle Anglin: Defendant's Motion for Leave to Communicate with Courthouse Staff (Doc. No. 127) and Defendant's Motion for Leave to Communicate with Jurors (Doc. No. 128). The Government responded in opposition (Doc. No. 132), and Defendant replied (Doc. No. 135).

In the Motions, Defendant notes that criminal defendants in other cases in the United States District Court for the Western District of Oklahoma have filed motions seeking new trials or evidentiary hearing based on the presence of security cameras in courtrooms used for jury deliberations.[1] Similar to the procedure in the cases cited by Defendant, and consistent with the general practice in this District during the COVID-19 pandemic, the jury in this case deliberated in an adjacent courtroom due to the need to facilitate social

---

[1] *See United States v. Nichols*, No. 21-cr-222 (W.D. Okla.) (Doc. No. 53); *United States v. Mayes*, No. 20-cr-240 (W.D. Okla.) (Doc. No. 184); *United States v. Sanchez*, No. 21-cr-183 (W.D. Okla.) (Doc. No. 69).

distancing among the jurors as a precaution against the spread of COVID-19. Defendant therefore seeks leave to inquire about topics relating to the jury deliberation in this case, including whether there was an active audio feed of the jury's deliberations, whether any juror asked about video or audio equipment, and whether the jury was aware of any video or audio equipment in the room.

## I.   *Preliminary Summary of Facts*

In order to address certain questions raised by Defendant and to facilitate resolution of the Motions, the Court provides below a preliminary summary of facts based on (1) preliminary findings of other courts in this District, derived from sources internal to the Court; and (2) this Court's own review of circumstances relevant to this case.

1. Jury deliberations in this case took place in Courtroom 303 in the William J. Holloway United States Courthouse. For the purpose of protecting the privacy of deliberations, the windows in the double door into the courtroom were covered with paper.

2. Courtroom 303 is two courtrooms west of Courtroom 305, where the jury trial in this case was held.

3. Deliberations took place in a courtroom, rather than in a jury deliberation room, due to the need to facilitate social distancing among the jurors, as a precaution against the spread of COVID-19.

4. During jury deliberations in this case, the security camera in courtroom 303 was on.

5. The security camera provides a video feed, but not an audio feed, to the court security officer ("CSO") control room in the courthouse.

6. In the CSO control room, there are 98 separate video feeds, visible on 12 monitors. The feeds are split among the monitors, and some feeds rotate periodically. Courtroom security video feeds each occupy a space approximately 9-inches by 5-inches on various monitors.

7. Ordinarily, there are two CSOs posted in the control room who are tasked with monitoring the 98 security camera feeds, among other control room duties. The control room schedule requires the CSOs to rotate through the control room hourly.

8. There were no live microphones in Courtroom 303 during jury deliberations.

9. Courtroom 303 also has cameras that are components of the videoteleconference ("VTC") system for the courtroom. The VTC cameras were turned off during jury deliberations in this case.

10. None of the cameras in Courtroom 303 provide any visual indication that the camera is turned on.

11. No juror indicated to the Bailiff, the Courtroom Deputy, or any other chambers staff that they were aware of any cameras or audio/video equipment in the deliberation room or expressed any concern about any camera or any other piece of audio/video equipment.

12. A total of 15 criminal cases went to jury deliberation between April 2021 and December 2021. Thirteen of those juries deliberated in courtrooms due to COVID-19 spacing requirements.

## II. Discussion

### A. Motion for Leave to Communicate with Courthouse Staff

Defendant requests leave to contact the Court's Courtroom Deputy and the law clerk who served as Bailiff to the jury to ask questions relating to the jury's deliberations in this case. Specifically, Defendant states that the purpose of the requested communications is to determine whether there was an audio feed transmitting during deliberations and whether any juror asked about or raised concerns about video or audio equipment in Courtroom 303. *See* Def.'s Mot. (Doc. No. 127) at 1. As set forth in the preliminary summary of facts above, there were no live microphones in Courtroom 303 during jury deliberations and no juror indicated to the Bailiff, the Courtroom Deputy, or any other chambers staff that they were aware of any camera or audio equipment in the deliberation room or expressed any concern about any camera or any other piece of audio/video equipment. Defendant's Motion for Leave to Communicate with Courthouse Staff (Doc. No. 127) is therefore DENIED.

If either party believes that any fact in the preliminary summary of facts is materially inaccurate, they may file a notice within 14 days of this Order informing the Court of the material inaccuracy. Any such notice shall (1) identify, by paragraph number, the fact being contested; (2) specifically state the basis for contesting that fact; and (3) identify any admissible evidence establishing that the fact is materially inaccurate.

### B. Motion for Leave to Communicate with Jurors

Defendant requests leave to contact the jurors for her trial to ask questions relating to their deliberation in this case. Specifically, Defendant states that the purpose of the

4

requested communications is to determine whether the jury was aware of video or audio equipment in Courtroom 303 and whether the jurors heard any conversation occurring outside the courtroom in the hallway. *See* Def.'s Mot. (Doc. No. 128) at 1. Other than the presence of video and audio equipment in the deliberation courtroom, Defendant does not identify any basis for believing that there was an intrusion that impermissibly affected the jury's ability to freely and openly deliberate in this case. Defendant identifies no basis for believing that conversations in the hallway affected the jury's ability to freely and openly deliberate.

Defendant does not explain how, relevant to the suggested purpose of challenging the jury's verdict in this case, any information Defendant might obtain from the jurors would be admissible in light of Federal Rule of Evidence 606(b). *See* Fed. R. Evid. 606(b)(1) ("During an inquiry into the validity of a verdict . . . , a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence or evidence of a juror's statement on these matters."). Even if Defendant could show that the juror information she seeks is admissible, the Court finds that the presence of a security camera, which did not have an audio feed and had no visual indication that it was active, and the presence of standard videoteleconferencing equipment, which was inactive, are insufficient to justify contacting jurors about their deliberations.

Defendant's Motion for Leave to Communicate with Jurors (Doc. No. 128) is therefore DENIED. *See Green Const. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005,

5

1012 (10th Cir. 1993) ("District courts have wide discretion to restrict attorney-juror contact in order to shield jurors from post-trial fishing expeditions by losing attorneys." (internal quotation marks omitted)).

    IT IS SO ORDERED this 6th day of May, 2022.

*[Signature]*
CHARLES B. GOODWIN
United States District Judge