# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CR-19-387-G |
| | ) |
| CHRISTINA ROCHELLE ANGLIN, | ) |
| a/k/a Christy Anglin, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court is Defendant Christina Rochelle Anglin's Motion for New Trial, or in the Alternative, Evidentiary Hearing (Doc. No. 146). The Government has submitted a Response (Doc. No. 152).

*I. Procedural Background*

In this matter, Defendant was charged via Indictment (Doc. No. 1) with six counts of failure to collect or pay over employment tax for certain quarters of 2017 and 2018, in violation of 26 U.S.C. § 7202.

A jury trial on the charges began on October 14, 2021. On October 22, 2021, the jurors retired for deliberation. Later that same day, the jury returned a verdict finding Defendant guilty on three counts and not guilty on the remaining three counts. *See* Verdict Form (Doc. No. 111).

In November of 2022, Defendant was sentenced to five years' probation and payment of restitution in the amount of $300,000.00. *See* Am. J. (Doc. No. 160) at 2, 5.

*II. Applicable Standards*

Defendant's Motion for New Trial is governed by Federal Rule of Criminal Procedure 33, which provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

The determination of whether to grant a new trial is "addressed to the sound discretion of the trial court." *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998) (internal quotation marks omitted). "[A] motion for new trial is regarded with disfavor," however, "and should only be granted with great caution." *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). "Because a motion for a new trial is based on the presumption that the verdict against the defendant is valid, the burden is on the defendant" to show that a new trial ought to be granted. *United States v. Velarde*, 860 F. App'x 132, 137 (10th Cir. 2021) (alterations, omission, and internal quotation marks omitted).[1]

Defendant's alternative request for an evidentiary hearing as to alleged influence

---

[1] The Government contends that the Court should review the objection presented in the Motion for New Trial for plain error due to Defendant's failure to raise the objection during trial. *See* Gov't's Resp. at 4-5 (citing Fed. R. Crim. P. 52(b)). The Court disagrees. First, while the Government's cited decision applied plain error review on a Rule 33 motion, that decision itself relied upon authorities applying that standard on direct appeal. *See United States v. Mayes*, 606 F. Supp. 3d 1127, 1130 (W.D. Okla. 2022); *see also United States v. Olano*, 507 U.S. 725, 732-33 (1993) (discussing Rule 52(b)'s "limitation[s] on appellate authority"). Second, even assuming that plain error review would otherwise apply, in contrast to *Mayes* it is not established here that Defendant or her counsel knew or reasonably should have known during trial of the factual basis for the objection—i.e., the jury conducting deliberations in a closed courtroom—as would have been required to object. *Cf.* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."); *United States v. Valentine*, 820 F.2d 565, 571 (2d Cir. 1987) ("We cannot expect clairvoyance on the part of defense counsel." (internal quotation marks omitted)).

upon the jury is likewise committed to the "broad discretion" of the Court. *United States v. Bornfield*, 145 F.3d 1123, 1132 (10th Cir. 1998); *see United States v. Sanchez*, No. 22-6207, 2024 WL 1502097, at *2 (10th Cir. Apr. 8, 2024). "[T]rial courts have a wide discretion in being able to protect the judicial process from influences that pose a danger to effective justice," and the courts may "protect jurors from unwanted post-trial harassment" or "shield[] jurors from post-trial 'fishing expeditions' carried out by losing attorneys interested in casting doubt on the jury's verdict." *J. Publ'g Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

III. *Defendant's Motion for New Trial*

A. *The Jury's Deliberations*

As noted above, the jurors in this matter retired for deliberation on October 22, 2021, and returned with their verdict later that same day. Jury deliberations took place in Courtroom 303 of the William J. Holloway, Jr. United States Courthouse, which is two courtrooms east[2] of Courtroom 305, where the trial was conducted. A courtroom, rather than a designated jury-deliberation room, was used as part of the Court's COVID-19 protocols to allow social distancing among the jurors. *See United States v. Nichols*, No. CR-21-222-SLP-1 (W.D. Okla. Feb. 2, 2022) (order denying motion for mistrial/new trial),

---

[2] The Court's previous order, from which many of these facts are drawn, incorrectly stated that Courtroom 303 was west of Courtroom 305. *See* Order of May 6, 2022 (Doc. No. 138) at 2; *see also* Def.'s Notice (Doc. No. 140) at 2.

3

*aff'd*, 2023 WL 5994479 (10th Cir. Sept. 15, 2023).[3]

For the purpose of protecting the privacy of deliberations, the small windows of the double doors into Courtroom 303 were covered with paper. There are microphones in every courtroom for use during Court proceedings; none of the microphones in Courtroom 303 were powered on or used during the jury's deliberations.[4] Courtroom 303 has cameras that are components of the video teleconference ("VTC") system. The VTC cameras were turned off during jury deliberations in this case.

Courtroom 303, "[l]ike all courtrooms in the building," also has a video-only stationary security camera positioned inside. *Nichols*, 2023 WL 5994479, at *3. This security camera was powered on during the jury's deliberations and provided a video-only (no audio) feed to the court security officer ("CSO") control room in the building. Ordinarily, there are two CSOs posted in the control room who are tasked with monitoring the 98 security camera feeds, among other control room duties. The control room schedule requires the CSOs to rotate through the control room hourly.

None of the cameras in Courtroom 303, including the security camera, provides any

---

[3] A total of 15 criminal cases went to jury deliberation in the courthouse between April 2021 and December 2021. Thirteen of those juries deliberated in courtrooms due to COVID-19 spacing requirements. *Mayes*, 606 F. Supp. 3d at 1129.

[4] Defendant argues that "[t]here is no admissible evidence that the microphones were turned off during the jury deliberations." Def.'s Mot. at 3; *see also* Def.'s Notice at 3. The Court has reviewed the audio record for Courtroom 303 on the relevant date and determined that no recording was made. Because the audio recording system automatically records whenever a microphone is on and any noise is made (such as a person speaking), the Court finds that the audio recording system and microphones remained powered off. This finding is consistent with the recollection of Court staff.

4

visual indication that the camera is turned on. No juror indicated to the Bailiff, the Courtroom Deputy, or any other court staff that he or she was aware of any cameras or audio/video equipment in Courtroom 303 or expressed any concern to the Court about any camera or other piece of audio/video equipment. Nor is there any indication in the record that any individuals other than the CSOs had access to the control room or had the ability to view the security-camera footage during the time that the jury was deliberating.

### B. Discussion

It is a "cardinal principle that the deliberations of the jury shall remain private and secret." *Olano*, 507 U.S. at 737 (internal quotation marks omitted). "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *Id.* at 737-38. In considering the presence of an alternate juror remaining in the deliberation room, the United States Supreme Court explained that courts should determine whether that presence had any prejudicial impact, as, "[i]f no harm resulted from [the] intrusion . . . , reversal would be pointless." *Id.* at 738 (internal quotation marks omitted). "There may be cases where an intrusion should be presumed prejudicial, but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Id.* at 739 (citation omitted).

In her Motion, Defendant argues that the cameras' presence was inherently prejudicial. *See* Def.'s Mot. at 6-9. In support of this argument, Defendant cites *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972), in which the Tenth Circuit held that the presence of an alternate juror in the jury deliberation room warranted a mistrial. *See id.* at

5

470-71. More recently, however, the *Olano* Court considered whether the presence of alternate jurors during deliberations affected substantial rights within the meaning of Rule 52(b) of the Federal Rules of Criminal Procedure. The Supreme Court instructed: "The presence of alternate jurors during jury deliberations is not the kind of error that affects substantial rights independent of its prejudicial impact." *Olano*, 507 U.S. at 737 (alteration and internal quotation marks omitted). The Court further held that "the mere presence of alternate jurors [did not] entail[] a sufficient risk of 'chill' to justify a presumption of prejudice" for purposes of Rule 52(b). *Id.* at 741; *see also United States v. Dempsey*, 830 F.2d 1084, 1090-91 (10th Cir. 1987) (holding that the mere presence of an interpreter for a deaf juror did not have a chilling effect on the jury's deliberations and rejecting a per se rule that an interpreter's presence in the deliberation room requires a new trial).

Defendant has not established that the presence of audio/visual equipment in the deliberation room, including fixed cameras with no light or other signal indicating transmission status, was inherently prejudicial. "If the presence of non-participating persons during jury deliberations [in *Olano*] was not presumptively prejudicial, the court cannot conclude that the presence of cameras during deliberations was inherently prejudicial." *Mayes*, 606 F. Supp. 3d at 1131. Indeed, two judges of this Court have rejected this proposition, holding in almost identical circumstances that "the mere passive presence of cameras" in a courtroom used for jury deliberations "did not entail a 'sufficient risk of chill to justify a presumption of prejudice.'" *Id.* at 1131-32 (quoting *Olano*, 507 U.S. at 741); *accord Nichols*, No. CR-21-222-SLP-1 (W.D. Okla. Feb. 2, 2022) (order); *cf. United States v. Dyer*, No. CR-22-209-JD, 2023 WL 1796437, at *3 (W.D. Okla. Feb. 7,

2023) (rejecting defendant's motion to dismiss indictment where, even if the grand jury could be shown to have met in a camera-equipped courtroom, there had been no plausible showing that the irregularity would have substantially influenced the jury's decision).

And, to the limited extent that the mere presence of such equipment or cameras in a courtroom could have suggested to a juror that the jury's deliberations were not secret, that suggestion was refuted by the Court's specific instruction to the contrary. The Court instructed the jury: "Your deliberations will be secret, you will never have to explain your verdict to anyone." *See* Trial Tr. 1246:3-5 (Doc. No. 136). "[J]urors are presumed to understand and follow instructions given to them"; moreover, "[i]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *United States v. Poole*, 545 F.3d 916, 921 (10th Cir. 2008); *Olano*, 507 U.S. at 738 (internal quotation marks omitted); *see also id.* at 740-41. The Court therefore presumes that the jury understood its deliberations were private and further finds that this instruction would alleviate any potential concern by a juror that they were being monitored or recorded.

Having considered the current record and relevant authorities, the Court concludes that Defendant has not shown that the mere presence of audio/visual equipment in Courtroom 303, including a video-only security camera, had a chilling effect on the jury's deliberations or was inherently prejudicial. As Defendant has not established that the interest of justice requires a new trial, this request shall be denied. *See Nichols*, 2023 WL 5994479, at *3; Fed. R. Crim. P. 33(a); *see also Mayes*, 606 F. Supp. 3d at 1131-32.

### C. Defendant's Motion for Evidentiary Hearing

Defendant alternatively argues that, even if the presence of the security camera in Courtroom 303 was not inherently prejudicial, the Court should conduct an evidentiary hearing to determine whether there was a prejudicial impact upon the proceedings. *See* Def.'s Mot. at 10.

Defendant seeks the ability "to determine whether the cameras were in fact monitored by a CSO," to find out "whether the recording of the jury deliberations has been deleted," and "to call all jurors about their recollection." *Id.* The Government opposes this request, arguing that Defendant's inquiry into the jury's thought processes is improper and that any evidence regarding the Court staff's observations is "irrelevant to whether the cameras had the purported chilling effect in the minds of the jurors." Gov't's Resp. at 10.

The Court largely agrees with the Government. As to Defendant's first and second proposed inquiries, the Court has found that the security camera transmitted to the separate control room and that the camera feed was subject to monitoring by the CSOs. Defendant fails to explain how further questioning in this vein plausibly would show that such monitoring, or the existence of a recording, "had any effect on the jury." *Nichols*, 2023 WL 5994479, at *3. "Assuming that one or more CSOs did . . . see an image on one of the monitors, that . . . provides no basis for speculation that any juror's thinking was affected by the presence of the cameras." *Mayes*, 606 F. Supp. 3d at 1132; *accord Sanchez*, 2024 WL 1502097, at *3 ("[A]lthough the Marshals Service confirmed the presence of an operating camera throughout the jury's deliberations, that confirmation reveals nothing about whether *the jurors* knew as much."). The Court therefore finds that a hearing as to

8

these issues "would not be useful or necessary." *United States v. McVeigh*, 153 F.3d 1166, 1186 (10th Cir. 1998).

As to Defendant's third proposed inquiry into the jurors' "recollection,"

> [t]he district court has a "duty" to investigate the circumstances of any "genuine concerns" about outside influence on jury deliberations. We ordinarily require the district court to determine the circumstances of the improper contact or other extraneous influence and the extent of the prejudice, if any, to the defendant. That said, not every allegation of improper influence requires further investigation. For instance, investigation may be unnecessary if the defendant provides only speculation that improper juror contact or other influence may have occurred or when there is no evidence any juror actually heard or saw the alleged improper influence. But outside those "rare occasions" in which it can be clearly established that investigation would not be useful or necessary, the district court must investigate when the defendant raises "genuine concerns" of improper influence.

*Sanchez*, 2024 WL 1502097, at *2 (alterations, citations, and internal quotation marks omitted).

In *Sanchez* it was confirmed that a courtroom security camera had recorded a jury's deliberations. The Tenth Circuit held that such confirmation raised genuine concerns and "triggered the district court's duty to investigate." *Id.* at *4. "[T]he presence of a camera during jury deliberations—even a camera that emitted no light or sound and did not record audio—could constitute an improper influence such that [a] district court ha[s] a duty to investigate the matter." *Id.* at *3.

Because it likewise has been confirmed in this case that the jury's deliberations were recorded by the security camera, the Court's duty to investigate has been triggered, and the Court is obligated to investigate "what the jurors knew." *Id.* Granting Defendant's request

9

to broadly ask each juror about his or her "recollection" of the deliberations would be violative of Federal Rule of Evidence 606(b)(1), however. That Rule prescribes:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1); *see Mayes*, 606 F. Supp. 3d at 1132 & n.7.

In *Sanchez*, the Tenth Circuit addressed the prohibitions of Rule 606(b) and explained that, while Rule 606(b)(1) prevents jurors from testifying as to the *effects* that any outside information or influence may have had on the jury's decision, certain limited questioning regarding the security camera's presence was permissible. *See Sanchez*, 2024 WL 1502097, at *3-4. Specifically, the appellate court held that such questioning is permitted under Federal Rule of Evidence 606(b)(2)(B), which allows a juror to "testify about whether" "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(B); *see Sanchez*, 2024 WL 1502097, at *3 ("Rule 606(b) does not prohibit courts from considering the degree to which the jury discussed and considered the extrinsic influence." (alteration and internal quotation marks omitted)).

The Tenth Circuit identified three questions that "do not run afoul of Rule 606(b)" and concluded that posing these questions to the jurors, either in writing or at a hearing, "could . . . produce . . . information not already before the district court" that would be material to Defendant's showing of an outside influence upon the jury. *Sanchez*, 2024 WL

1502097, at *3-4.  The questions endorsed in *Sanchez* are as follows:

> (1) Whether the jurors were aware of the security camera;
> (2) Whether the jurors knew that the security camera was on; and
> (3) If so, whether the jurors discussed the presence of the security camera.

*See id.* at *3.

The pertinent facts of *Sanchez* and this case are materially identical.  And, like the defendant in *Sanchez*, Defendant seeks further investigation "to develop the record" and "determine whether the camera's presence influenced the jury deliberations."  *Id.* at *4; *see* Def.'s Mot. at 10.  Pursuant to *Sanchez* and Federal Rule of Evidence 606(b)(2)(B), the Court therefore will grant Defendant's alternative request to develop the record regarding the security camera's presence during jury deliberations.

## CONCLUSION

For the foregoing reasons, Defendant's Motion (Doc. No. 146) is GRANTED IN PART and DENIED IN PART.

Defendant's request for a new trial under Federal Rule of Criminal Procedure 33(a) is denied.  Defendant's accompanying Motion (Doc. No. 141) requesting leave to take photographs is likewise denied.

Defendant's alternative request for an evidentiary hearing is granted insofar as the Court will consider any specific request to conduct further investigation by questioning the jurors regarding the issue of the security camera's presence during deliberations, as outlined herein and limited to the questions identified by the Tenth Circuit in *Sanchez*.

This matter is hereby set for a status conference at **2:00 p.m. on December 1, 2025**.

IT IS SO ORDERED this 7th day of November, 2025.

_____
CHARLES B. GOODWIN
United States District Judge